IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KAWAYNE STEEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:17-cv-349-MHT-GMB |
| | ) | [WO] |
| VISCOFAN USA, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b)(1), this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law. Doc. 13. On September 6, 2016, Plaintiff Kawayne Steel filed this lawsuit against Viscofan USA, Inc. ("Viscofan")[1] in the Circuit Court of Montgomery County, Alabama. Doc. 1-1. After the Circuit Court severed Steel's tort claims from his workers' compensation claim, Viscofan removed the tort claims to this court on May 31, 2017. Doc. 2. Now before the court is Steel's Motion to Remand. Doc. 8. After careful consideration of the parties' submissions, *see* Docs. 8, 9, 11, 17 & 18, and the applicable law, the undersigned recommends that the motion to remand be DENIED.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Viscofan employed Steel as a machine operator in an industrial facility in Montgomery County. Doc. 2-2 at 3. On March 23, 2016, Steel cut his left arm as he fed a

---

[1] Steel later amended his complaint to state claims against additional defendants, as discussed below.

meat casing onto a machine, resulting in significant injuries. Doc. 2-2 at 3–4. According to his complaint, the defendants improperly designed, manufactured, installed, distributed, sold, or assembled this machine, causing Steel's injuries. Doc. 2-2 at 5.

Initially, Steel brought state-law claims against Viscofan in the Circuit Court pursuant to the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") and for negligence and wantonness. Doc. 2-1 at 5–8. Steel also brought a workers' compensation claim. Doc. 2-1 at 4. He joined all of these claims in the same lawsuit, designated by the Circuit Court as Civil Action Number 03-CV-2016-901184. Docs. 2-1 & 2-6. Viscofan removed the case to this court on October 6, 2016, and then moved to sever and to remand the workers' compensation claim. *See Steel v. Viscofan USA, Inc.*, 2017 WL 253960, *1 (M.D. Ala. Jan. 19, 2017). The undersigned declined to sever the claims and remanded the entire case. *Id.* at *4.

Back in state court, Steel amended his complaint to add several foreign corporations as defendants. *See* Doc. 2-2. Then, on May 1, 2017, the state court severed Steel's workers' compensation claim from his tort claims pursuant to Rule 21 of the Alabama Rules of Civil Procedure[2] over Steel's objection. Docs. 2-6 at 311 & 17-3. The new case—consisting only of Steel's tort claims—was docketed as Civil Action Number 03-CV-2017-000261. Doc. 2-8. Viscofan removed this new lawsuit on May 31 on the basis of diversity jurisdiction. The notice of removal alleges that Viscofan is a citizen of Delaware and Illinois; Defendants Viscofan SA, Master Automatismos SL, and Disenos y Projectos

---

[2] "Any claim against a party may be severed and proceeded with separately." Ala. R. Civ. P. 21.

Electronicos are citizens of Spain; and Defendant Kuko is a citizen of China.[3] Doc. 2 at 5. Viscofan asserts that the case meets the requirements for diversity jurisdiction because Steel is a citizen of Alabama and his claims place more than $75,000 in controversy. Doc. 2 at 4–10. Steel does not dispute that the parties are diverse or that the amount in controversy exceeds the jurisdictional threshold, *see* Doc. 9, but nevertheless presents three arguments for remand, as explained below. These arguments are ultimately unavailing, and the undersigned concludes upon an independent review of the record that the prerequisites for federal jurisdiction have been satisfied.

## II. DISCUSSION

This is a court of limited jurisdiction. Only cases that originally could have been filed in federal court may invoke this court's jurisdiction through removal from a state court. *E.g.*, 28 U.S.C. § 1441(a); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). The "removing defendant bears the burden of proving proper federal jurisdiction." *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) (citing *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319–20 (11th Cir. 2001)). In analyzing whether the defendant has carried that burden, the "removal statutes are construed narrowly" and "uncertainties are resolved in favor of remand." *Burns*, 31 F.3d at 1095 (citing *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108 (3rd Cir. 1990), and *Coker v. Amoco Oil Co.*, 709 F.2d 1433 (11th Cir. 1983)). Here, the undersigned concludes that there is no uncertainty over

---

[3] To the extent Steel brings tort claims against fictitious defendants, "[a]s a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). Moreover, the citizenship of fictitious parties is disregarded for the purposes of diversity jurisdiction. *See* 28 U.S.C. 1441(b)(1) ("In determining whether a civil action is removable . . . the citizenship of defendants sued under fictitious names shall be disregarded.").

Viscofan's proof of federal jurisdiction.

A.  **Section 1445(c) Non-Removability**

Steel first argues that, "[b]ecause this action arises under Alabama's Workers Compensation Act, it is non-removable pursuant to [28] U.S.C. § 1445(c)." Doc. 9 at 6. Steel is correct to contend that federal courts lack subject-matter jurisdiction over workers' compensation claims, *Formosa v. Lowe's Home Centers, Inc.*, 806 F. Supp. 2d 1181, 1186 (N.D. Ala. 2011), and that any case "arising under the workmen's compensation laws" of a state is not removable. 28 U.S.C. § 1445(c). However, Steel fails in his attempt to shoehorn his tort claims into § 1445(c).

In *Reed v. Heil Company*, the Eleventh Circuit distinguished certain common-law causes of action from state-law retaliatory discharge claims in concluding that retaliatory discharge claims arise under the Alabama workers' compensation statute. *See Reed v. Heil Co.*, 206 F.3d 1055, 1058–60 (11th Cir. 2000). Specifically, the court found that the retaliatory discharge statute is "an integral part of Alabama's workers' compensation regime" because it had been "[c]odified together with the remaining workers' compensation laws [and] passed to enhance the efficacy of the overall workers' compensation system." *Id.* at 1060. Court decisions involving common-law tort-like claims—including one for an employer's intentional injury to its employees—were "inapposite" because the common-law claims "are so different from Alabama's retaliatory discharge statute." *Id.* Applying *Reed* when Viscofan first removed this case, the undersigned concluded that Steel's tort claims "are precisely the type of common-law claims distinguished by the *Reed* court," and therefore they do not implicate § 1445(c).

4

*Steel*, 2017 WL 253960, at *2; *see also Payne v. J.B. Hunt Transp., Inc.*, 154 F. Supp. 3d 1310, 1315 (M.D. Fla. 2016) (holding that a negligence claim does not arise under Florida's workers' compensation law); *Moore v. CAN Found.*, 472 F. Supp. 2d 1327, 1329 n.* (M.D. Ala. 2007) ("[I]t appears that a common-law cause of action related to a workers' compensation claim is not affected by § 1445(c)."). Then as now, Steel's tort claims do not arise under Alabama's workers' compensation law within the meaning of § 1445(c), and therefore this statute does not preclude removability.

**B.   Voluntary/Involuntary Doctrine**

Alternatively, Steel relies on the voluntary/involuntary doctrine, which bars removal in certain circumstances even when the requirements of federal jurisdiction are otherwise satisfied. Doc. 9 at 7. Specifically, Steel points to *Priest v. Sealift Services International, Inc.*, 953 F. Supp. 363 (N.D. Ala. 1997), for the proposition that "[a] case does not suddenly become removable after having been non-removable unless and except by some *voluntary* act of [the] plaintiff." *Priest*, 953 F. Supp. at 364. *Priest* itself is factually distinguishable, as the *Priest* court was careful to note that "despite the severance, this was, at the time of removal, still one case." *Id.* at 363. The same cannot be said for the instant case, in which the state-court severance resulted in two separate actions with unique case numbers. *See* Docs. 2-6 (Civil Action Number 03-CV-2016-900184) & 2-8 (Civil Action Number 03-CV-2017-000261). This fact alone undercuts Steel's reliance on *Priest*, but it does not foreclose the applicability of the voluntary/involuntary doctrine despite the rule's genesis in 1890s case law and an outdated statutory removal scheme. *See Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 547 (5th Cir. 1967) (tracing the

5

doctrine's lineage to *Powers v. Chesapeake & Oh. Ry. Co.*, 169 U.S. 92 (1898), and *Whitcomb v. Smithson*, 175 U.S. 635 (1900), in reaffirming the doctrine following the 1949 amendments to § 1446).

In part due to this lineage, the voluntary/involuntary doctrine demands a nuanced analysis of modern Eleventh Circuit precedent. As explained below, the court first finds that the applicability of the doctrine is not limited to involuntary dismissals of non-diverse defendants. Next, even though the court finds that the doctrine is broad enough that it might impact involuntary Rule 21 severances, the undersigned concludes that the doctrine does not bar the instant removal because Steel's appellate rights were extinguished prior to removal and the severance did not resolve the merits of Steel's claims.

### 1. *The Scope of the Doctrine*

As an initial matter, the parties have taken opposing positions on the scope of the voluntary/involuntary rule. Specifically, they disagree on which actions triggering removal fit within the contours of the doctrine. Borrowing language from *Weems*, the courts of this circuit frequently invoke the voluntary/involuntary rule following the involuntary dismissal of a non-diverse defendant. *See, e.g., Weems*, 380 F.2d at 547 (holding that a case may be removed "if the resident defendant was dismissed from the case by the voluntary act of the plaintiff," thus creating diversity of citizenship); *Lane v. Champion Int'l Corp.*, 844 F. Supp. 724, 729 (S.D. Ala. 1994) ("Under the voluntary/involuntary rule, a defendant may remove a qualified diversity action from state to federal court after the dismissal of a nondiverse defendant only if the plaintiff voluntarily dismissed the nondiverse defendant.").

But this court has not found, and the parties have not offered, any authority within the circuit specifically finding that only involuntary dismissals of non-diverse defendants—and not other actions resulting in complete diversity of citizenship—fall within the scope of the rule. On the contrary, both *Priest* and *Phillips v. Unijax*, 625 F.2d 54 (5th Cir. 1980),[4] addressed triggering events other than the dismissal of a non-diverse defendant, and both lend support to the proposition that the involuntary severance at issue here may fall within the rule. *See Priest*, 953 F. Supp. at 363 (remanding, among other reasons, due to the involuntary severance of the plaintiff's tort and workers' compensation claims); *Phillips*, 625 F.2d at 56. The former Fifth Circuit explained its rationale for this broad interpretation of the doctrine in *Phillips*, observing that the severance of claims under Alabama Rule of Civil Procedure 21 could be said to achieve "the practical equivalent result" of the dismissal of a party because both actions create "an independent lawsuit between completely diverse parties."[5] *Id*.

The undersigned finds wisdom in the Fifth Circuit's dicta to the extent that a broad formulation of the voluntary/involuntary rule fulfills the underlying purposes for the doctrine. The Eleventh Circuit's *per curiam* opinion in *Insinga v. Labella*, 845 F.2d 249 (11th Cir. 1988), identified two core justifications for the rule. First, there is a procedural basis: "the desire to avoid a transfer of a case to federal court where the removal is premised

---

[4] The Fifth Circuit handed down the *Phillips* opinion on August 28, 1980, prior to the Eleventh Circuit's formation, and therefore it is binding authority for this court. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting as binding precedent all decisions of the 5th Circuit handed down prior to the close of business on September 30, 1981).

[5] This discussion was not essential to the *Phillips* court's holding because the state court had ordered separate trials under Alabama Rule of Civil Procedure 42(b) rather than severance under Rule 21. *Phillips*, 625 F.2d at 56.

on developments in the state court that could later be reversed by a state appellate court thereby relegating the parties to their non-diverse positions originally pled in the complaint." *Id*. at 252. The court characterizes this as the "finality/appealability" justification. *Id*. But while this "may be one concern underlying the voluntary-involuntary rule, it is not the only one." *Id*. The doctrine also is rooted in the long-standing "policy favoring a plaintiff's right, absent fraudulent joinder, to determine the removability of his case." *Id*. Both policies are best served by a broad application of the rule. For example, a removal immediately following an involuntary Rule 21 severance could occur prior to the exhaustion of the plaintiff's state-court appellate rights, running afoul of the finality rationale, and would also contravene the plaintiff's choice of forum. This court therefore finds, consistent with *Insinga*, that the voluntary/involuntary rule may bar the removal of tort claims severed from a workers' compensation action over the plaintiff's objection if all other prerequisites of the doctrine are met.

2. *Finality*

Having resolved the question of the scope of the doctrine—at least for present purposes—the court turns to whether Viscofan's removal satisfies the remaining requirements for the applicability of the voluntary/involuntary doctrine, and finds that it does not. As the doctrine has developed over time in the Eleventh Circuit, the rule has been interpreted as a bar to removability in two specific scenarios.[6] The first occurs when

---

[6] In either context, there must be evidence that the action triggering removal was, in fact, involuntary—that is, over the objection of the plaintiff. *See, e.g.*, *Weems*, 380 F.2d at 546 (describing the doctrine as prohibiting removals that are "the result of either the defendant's or the court's acting against the wish of the plaintiff"); *cf. Harrison v. Ace Am. Ins. Co.*, 2009 WL 1664372, at *1 (M.D. Ala. June 15, 2009) (denying remand without discussion of the voluntary-involuntary doctrine where the state court severed

there has been an involuntary triggering event and the plaintiff's state appellate remedies were not exhausted before the removal of the action. The previous exhaustion of appeal rights is crucial so that a removing defendant "cannot, with removal, cut off [the plaintiff's] proper right to ask the state trial court to reconsider" the order creating diversity. *Barron v. Werner Ent., Inc.*, 462 F. Supp. 2d 1217, 1220 (M.D. Ala. 2006). The Eleventh Circuit therefore describes finality as "a necessary condition to support removal." *Insinga*, 845 F.2d at 253; *see also Barron*, 462 F. Supp. 2d at 1220 (explaining that the *Insinga* court found "that state-court finality is a 'necessary condition' but not the only condition").

Here, the state court severed Steel's worker's compensation claim from his tort claims on May 1, 2017, and Viscofan removed the tort case to this court on May 31. *See* Docs. 2-8 at 176 & 2 at 1. According to the Alabama Rules of Appellate Procedure, permissive appeals of interlocutory orders are due within 28 days of the order being appealed absent a showing of good cause. *See* Ala. R. App. P. 5(a)(1). An order severing claims under Alabama Rule of Civil Procedure 21 is interlocutory and can only be appealed permissively, thus triggering Appellate Rule 5. *See Ex parte Alfa Life Ins. Corp.*, 923 So. 2d 272, 273 (Ala. 2005) (holding that a writ of mandamus, designed for "emergency and immediate appellate review of an order that is otherwise interlocutory and not appealable," is the "appropriate means for challenging a trial court's ruling on a motion to sever claims"). Accordingly, Steel had until May 30 to appeal the state-court severance order. He did not do so, nor did he show good cause for appealing out of time. As a result, Steel's

---

tort claims from a workers' compensation claim but the plaintiff did not argue in federal court that the severance was involuntary). Here, as noted above, Steel opposed the severance in state court.

9

appeal rights were extinguished at the time of Viscofan's May 31 removal, and thus the voluntary/involuntary rule is not a bar to removal based on a lack of finality.

### 3. *Merits Distinction*

Drawing from the doctrine's lineage, the *Insinga* court articulated a second context in which the voluntary/involuntary rule prevents removal: where the order creating diversity jurisdiction was a ruling on the merits. *Insinga*, 845 F.2d at 254 (quoting *Whitcomb*, 175 U.S. at 638) ("[T]he Court emphasized that the state court's dismissal of the remaining resident defendant 'was a ruling on the merits . . . adverse to plaintiff, and without his assent, and the trial court rightly held that it did not operate to make the cause then removable . . . .'"). As the *Insinga* court explained, "had the state court dismissal been based on a finding of lack of jurisdiction over the resident defendant, the voluntary-involuntary rule would not have come into play." *Id*. Therefore, the state-court dismissal of a non-diverse defendant allowed for removability in *Insinga* because sovereign immunity, under Florida law, "is a 'defense that relates solely to the jurisdiction of the court,' not the merits of the case." *Id*. (quoting *State Rd. Dept. v. Brill*, 171 So. 2d 229, 230 (Fla. Dist. Ct. App. 1980)).

Similarly, Rule 21 severance is not a ruling on the merits. Instead, severance is a procedural mechanism for case administration—it does not resolve or dispose of any claims. As a result, the court in *Hofmann v. De Marchena Kaluche & Asociados*, 642 F.3d 995 (11th Cir. 2011), for example, assumed without deciding that a Federal Rule of Civil Procedure 21 severance of claims "resolve[s] an important issue completely separate from the merits of the action." *Hofmann*, 642 F.3d at 997; *see Ex parte Duncan Constr. Co.,*

*Inc.*, 460 So. 2d 852, 854 n.1 ("Because the [Alabama Rules of Civil Procedure and Federal Rules of Civil Procedure] are virtually verbatim, a presumption arises that cases construing the Federal Rules are authority for construction of the Alabama Rules."). This is because a "severed claim under Rule 21 proceeds as a discrete suit and results in its own final judgment from which an appeal may be taken." *Id*. at 998 (citing *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 441 & n.17 (7th Cir. 2006)). In this respect, the court analogized Rule 21 severance to Rule 42 orders for consolidation or separate trials, which also do not resolve the merits of any claim. *Id*.; *see also Ulysse v. Waste Mgmt., Inc. of Fla.*, 645 F. App'x 838, 840 (11th Cir. 2016) (distinguishing between a Rule 21 severance order and a final judgment on the merits in the appellate context). Because Rule 21 severance is not a ruling on the merits, this requirement for applicability of the voluntary/involuntary bar to removal is not met. Absent concerns for finality or a merits determination, the voluntary/involuntary rule has no impact on this removal.

**C.     Partial Removal**

Finally, Steel argues that "ordinarily, entire cases are removed and not parts of cases." Doc. 9 at 7. But this argument depends on a mischaracterization of this case as a partial removal. A severance under Rule 21 of the Alabama Rules of Civil Procedure—just as under the federal rules—results in two separate lawsuits. *See, e.g.*, *Phillips*, 625 F.2d at 56. Indeed, "severed claims become entirely independent actions to be tried, and judgment entered thereon, independently." *Id.* (citation and internal quotation marks omitted); *see also Kitchen v. Heyns*, 802 F.3d 873, 875 (6th Cir. 2015) ("Courts treat severed claims as if the plaintiff had originally filed two separate lawsuits."); *Title Pro*

*Closings, L.L.C. v. Tudor Ins. Co.*, 840 F. Supp. 2d 1299, 1303 (M.D. Ala. 2012) ("[A] claim severed under Alabama law loses any connection it had to the original case."). Steel's state-court cases have unique case numbers, underscoring their separate and independent nature. *See, e.g.*, *Phillips*, 625 F.2d at 56 (noting the state court's single case number in rejecting a finding of severance). Therefore, given that the voluntary/involuntary doctrine does not apply, when the state court's severance created two separate lawsuits, the case involving only the tort claims became removable as long as it satisfies the other requirements for diversity jurisdiction under § 1446(b)(3).

**D.     Jurisdictional Requirements**

Even though Steel has not contested the timing of the removal, the complete diversity of the parties, or the amount in controversy, the court still must assure itself that the removal was proper and that it enjoys subject-matter jurisdiction over this action. Viscofan removed this case pursuant to 28 U.S.C. § 1446(b)(3),[7] which allows removal "within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). As set out above, the state court issued the severance order on May 1 and Viscofan filed its notice of removal 30 days later on May 31, so the removal was timely. The notice of removal

---

[7] Despite the fact that the state-court severance created two separate actions, the court concludes that Viscofan's removal invokes § 1446(b)(3) rather than (b)(1). *See Harrison*, 2009 WL 1664372, at *1 (citing § 1446(b)(3) for a removal following the state court's severance of a workers' compensation claim from the rest of the suit); *cf. Title Pro Closings*, 840 F. Supp. 2d at 1303 (quoting Ala. R. Civ. P. 3 in stating that, under the Alabama Rules of Civil Procedure, "a civil action is commenced by filing a complaint with the court").

establishes that the parties are completely diverse, and Steel does not contest either of these contentions. *See* Doc. 2 at 5.

The undersigned further concludes that the severance order, state-court complaint, and the notice of removal and exhibits "unambiguously establish federal jurisdiction." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1214 (11th Cir. 2007) (holding that, where a plaintiff has challenged the propriety of removal with a timely motion to remand, "the district court has before it only the limited universe of evidence available when the motion to remand is filed—i.e., the notice of removal and accompanying documents"). "If the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction." *Id.* at 1211. As concluded above, § 1445(c)'s prohibition on federal jurisdiction lifted once the state court's severance disentangled Steel's tort claims from his workers' compensation claim. And it is readily deducible from the notice of removal and its accompanying documents that the amount in controversy for the tort claims exceeds $75,000—another point Steel does not contest. Viscofan attached to its notice of removal copies of Steel's medical bills totaling in excess of $52,000. *See generally* Doc. 2-9. Steel also requests damages for pain and suffering, punitive damages, and future medical expenses for what he describes as a "significant injury" that "resulted in the loss of use of his left arm and permanent disfigurement." Doc. 2-2 at 4. Steel's paystubs demonstrate that he has placed in controversy more than $20,000 per year in future earnings and over $7,000 for eleven weeks of back pay. *See* Doc. 2-10; *Kok v. Kadant Black Clawson, Inc.*, 274 F. App'x 856, 857 (11th Cir. 2008) (calculating amount in controversy based on a plaintiff's lost wages as reflected by a tax form). The

undersigned may readily deduce from the nature of Steel's claimed injuries, the extent of his medical bills, and the information on his paystubs that the amount in controversy exceeds $75,000 exclusive of interest and costs. Accordingly, the notice of removal and its attachments, considered in conjunction with Steel's amended state-court complaint, unambiguously establish that the prerequisites for federal jurisdiction have been satisfied.

### III. CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge RECOMMENDS that the Motion to Remand (Doc. 8) be DENIED. It is further ORDERED that the parties are DIRECTED to file any objections to the report and recommendation **not later than November 22, 2017**. Any objections filed must specifically identify the findings in the Magistrate Judge's report and recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this report and recommendation is not a final order of the court and, therefore, is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report and recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the report and recommendation and shall bar the party from attacking on appeal factual findings in the report and recommendation accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Secs., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 8th day of November, 2017.

/s/ Gray M. Borden
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE